IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

CANDINA L. BEEBE,

                    Plaintiff,                          OPINION AND ORDER

          v.
                                                        18-cv-794-bbc
ANDREW M. SAUL,
Commissioner of Social Security,

                    Defendant.

Plaintiff Candina Beebe is seeking review of a final decision by defendant Commissioner of Social Security denying her claim for disability insurance benefits under the Social Security Act. 42 U.S.C. § 405(g). Dkt. #10. (I have amended the caption to reflect that the new Commissioner of Social Security is Andrew M. Saul.) Plaintiff contends that the administrative law judge who decided the case erred by (1) rejecting the opinions of her treating physician and the state agency physicians that she could not use her right hand for any work activity; (2) failing to assess her complex regional pain syndrome in her right hand in accordance with Social Security Ruling (SSR) 03-02p; (3) inadequately evaluating her subjective complaints under SSR 16-3P; and (4) not considering the left arm limitations assessed by her treating physician and the state agency physicians.

For the reasons explained below, I find that the administrative law judge did not provide an adequate explanation for rejecting the physician opinions and plaintiff's subjective complaints regarding her right hand limitations. Therefore, I will reverse the commissioner's decision and remand this case for further proceedings.

The following facts are drawn from the administrative record (AR).

FACTS

A.  Social Security Application and Background

Plaintiff filed an application for disability insurance benefits on June 24, 2014, contending that she had been disabled since April 5, 2013 because of complex regional pain syndrome of the right hand.  She was born on March 26, 1973, making her 41 years old when she applied for benefits.  AR 246-48.  Plaintiff has prior work experience as a switchboard operator and customer service representative.  AR 29.  She stopped working in April 2013 because pain and weakness in her right hand and pain in her right elbow were making it difficult to do her computer work.  AR 478.

In a function report dated August 28, 2014, plaintiff wrote that she could not use her right hand for most tasks because of pain and swelling.  She reported that she had problems holding things because she dropped them without warning and that she was not able to drive, brush her hair, fasten buttons or snaps, fold clothes, make the beds, sweep, open containers or hold dishes to wash them.  Plaintiff reported that she could wash and dry clothes, make meals with some help, vacuum and grocery shop.  AR 262-63, 265, 267.

B.  Relevant Medical Evidence

1.  Initial symptoms and carpal tunnel surgeries in 2013

Plaintiff first reported having pain in her right elbow and pain and weakness in her right hand at a doctor's visit on April 9, 2013.  An examination revealed that she had some swelling in her right wrist and hand, a notably weak grasp in her right hand and could

supinate (face her palm up) for only a short period. She had full range of motion in her right hand as far as grasping and could abduct and oppose her thumb without a problem. AR 327-28. Following unsuccessful treatment with medications and a steroid injection, plaintiff saw physiatrist Dr. Jay Loftsgaarden on April 24, 2013. AR 478. A physical examination revealed that plaintiff had full range of motion in her right extremity and overall normal strength in her right arm, but the physician noted that both tests caused plaintiff a lot of pain. She also had marked tenderness in her right elbow and forearm, a positive Tinel sign at the elbow and some weakness in the finger flexors of her right hand. AR 479.

A May 9, 2013 nerve conduction study showed median neuropathy on both arms, but worse on the right. AR 472-73. On May 30, 2013, plaintiff saw orthopedist Dr. Jose Ortiz. Her grip strengths and pinch were the same on the right and left sides, and she had full range of motion of the right elbow, wrists and fingers. Dr. Ortiz diagnosed bilateral carpal tunnel syndrome. AR 464.

Plaintiff underwent carpel tunnel release surgery on the right side on May 31, 2013. AR 458-60. Dr. Ortiz told plaintiff that the surgery was designed to prevent further nerve damage and should address some of the pain and numbness in her wrists and hands, but it would not reduce her elbow or shoulder pain. AR 462-64.

On June 13, 2013, plaintiff saw physician assistant Troy Stoneberg for a post-surgical follow-up. She reported improvement in the numbness and tingling in her right hand but continued pain in her right elbow and shoulder, and significant pain, swelling and decreased range of motion in her right hand. Left-sided carpel tunnel release was scheduled for July

8, 2013. AR 455-57 Although plaintiff was scheduled to return to work within a week, she reported that she could not use a mouse or keyboard at that point. AR 455. Stoneberg noted with respect to plaintiff's right hand that she had markedly suboptimal digital range of motion, flexion lag in all digits, no grip and significant tenderness and swelling. He recommended occupational therapy to "aggressively" work on her digital range of motion. AR 456-57.

Plaintiff restarted occupational therapy on June 25, 2013. (Plaintiff's last therapy visit had been on April 30, 2013, prior to her surgery. AR 451.) The therapist noted that plaintiff might be focusing too much on her pain and needed to be assertively working her hand. AR 452-53. Plaintiff cancelled her next therapy session scheduled for July 5, 2013, stating that she was undergoing left-sided carpal tunnel release surgery on July 8. The therapist noted that plaintiff had partially met her goals with respect to her right hand but had work to do to increase her strength and range of motion. Plaintiff was discharged from therapy in light of her need for additional surgery. AR 449-50.

Physician assistant Stoneberg saw plaintiff for a post-operative visit on July 24, 2013. He noted that plaintiff's left hand and wrist were healing well after surgery but that she still had significant problems on the right side. Stoneberg referred plaintiff to occupational therapy and extended her leave of absence by two weeks because she did not feel ready to return to work. AR 447-48.


2. Continued symptoms and treatment in 2013

Plaintiff had an occupational therapy appointment on August 5, 2013. AR 443. Although additional therapy was recommended, plaintiff did not show up for her next appointment on August 13, 2013 or reschedule the appointment. AR 439. (Although no explanation was noted in the record for the missing appointments, on October 28, 2013, plaintiff reported to her occupational health physician, Dr. Michael Fitzgerald, that she had not been to occupational therapy for a couple of months because of difficulties with transportation. She stated that she had been doing home exercises and that she would see whether her insurance would approve therapy at a local hospital. AR 426-27.)

On September 9, 2013, Dr. Fitzgerald noted that plaintiff had a good range of motion in her left hand, which was healing well, but that she could not make a fist with her right hand and had zero grip strength. She also had pain in her long and ring fingers on the right side, for which she had received steroid injections a few days earlier. Dr. Fitzgerald's examination also revealed that plaintiff could elevate her arms overhead and could move all of the fingers in her left hand without restriction, but she had pain on the right when reaching behind and swelling in the right long and ring fingers. He noted that plaintiff was likely to be off work for a while and could not perform any keyboarding or other work with her right hand for the next six weeks. He stated the opinion that plaintiff could use her left hand moderately for pinching, simple gripping and fine manipulation on a part-time basis. AR 433-34.

On October 28, 2013, Dr. Fitzgerald noted that plaintiff would be off work until he saw her again in six weeks. Because of worsening symptoms in her right hand, plaintiff was scheduled for right trigger finger release surgery on November 15. AR 426-27.

On December 26, 2013, Stoneberg noted that plaintiff continued to have significant discomfort and pain in her right hand and was unable to make a full fist. He noted that plaintiff had attended a couple of physical therapy sessions but had to cancel some appointments. Plaintiff had been doing her prescribed hand exercises at home. Stoneberg did not test plaintiff's grip strength because she was in too much pain, but he noted that she had suboptimal range of motion in her right hand because of swelling and full range of motion in her left fingers. Stoneberg stated that plaintiff had to work aggressively to get her right hand moving or she would never be able to make a full fist again. AR 416.

On December 27, 2013, Dr. Fitzgerald noted that plaintiff was not able to do any more than 15 minutes of computer work before having to stop because of the pain in her right hand. Although plaintiff had been enrolled in occupational therapy, she had difficulty attending in the past few weeks because of illness and the weather. Her plan was to start going to therapy twice a week. AR 413. Given the persistent pain, swelling and discoloration in her right hand, Dr. Fitzgerald suspected that plaintiff had complex regional pain syndrome, an assessment with which pain management physician Dr. Stephen Endres agreed on January 17, 2014. AR 411.

### 3. 2014 treatment

On February 4, 2014, a physical therapist noted that plaintiff had a swollen right hand, was unable to flex her right hand fully or make a fist and lacked good opposition with her right thumb in any position. Plaintiff was able to use her right arm to a limited extent to transfer herself on and off the treatment table. AR 408.

On March 12, 2014, Dr. Fitzgerald said that plaintiff should remain off work for another three months. Her grip was zero on the right and 10 on the left, and she had limited range of motion of the right hand and wrist. AR 406.

On July 8, 2014, plaintiff saw Dr. Fitzgerald for new symptoms in her left hand, including stiffness, numbness and tingling, as well as left elbow pain. Upon examination, plaintiff had adequate strength and range of motion on her left hand, but she had some impingement in her left shoulder with abduction or flexion and external rotation at 90 degrees. She reported that the symptoms in her right hand and wrist had not changed. In Dr. Fitzgerald's opinion plaintiff was permanently disabled by her medical problems. He diagnosed left rotator cuff impingement and referred her to a physical therapy practice closer to her home for the impingement and thoracic outlet symptoms. AR 364-65.

### 4. 2015 treatment

In early 2015, plaintiff saw a physical therapist for an initial evaluation, but it was extremely difficult for her, so she cancelled her follow-up appointment. AR 542. On January 9, 2015, plaintiff saw Dr. Fitzgerald for worsening symptoms in her right hand and arm,

including swelling, discoloration, pain and feeling cold. She also said that her left arm was sore but that she was able to use it. She told Dr. Fitzgerald that she did not go to physical therapy for her left arm and shoulder because she was afraid that she would injure it further. Dr. Fitzgerald noted that plaintiff's right arm and hand shook with a tremor during the examination; her right hand was cool to the touch, tender in places and swollen; her reach was limited on the right; and her left hand and arm were unremarkable (including with reaching up to her head) except for a positive cross-arm impingement sign. In his opinion plaintiff was unable to maintain full-time, competitive work because of her multiple problems. Dr. Fitzgerald also noted that plaintiff could not grip well with her right hand and had difficulty with meal preparation, grasping pens and brushing her hair. AR 543-45.

On January 28, 2015, plaintiff saw Dr. Loftsgaarden, who noted tenderness in plaintiff's right shoulder and no activation of the external rotators, swelling in her right hand with the inability to make a full fist and no abnormalities on the left side. Dr. Loftsgaarden recommended a ketorolac injection (used for short-term treatment of moderate to severe pain) for plaintiff's right shoulder to improve her functioning. AR 540-41.

Plaintiff saw Dr. Loftsgaarden again on June 9, 2015, following a magnetic imaging resolution study of her right shoulder. The imaging study revealed moderate arthropathy of the acromioclavicular joint but no other significant abnormalities. Dr. Loftsgaarden noted that plaintiff had tenderness throughout her right forearm and wrist and some nodularity with her tendons. He noted that he did not have a good explanation for plaintiff's symptoms other than complex regional pain syndrome and possible trigger fingers. There

was not much else that Dr. Loftsgaarden could do to help plaintiff, but he referred plaintiff to orthopedist Dr. Aundrea Rainville for a surgical consultation as to her possible trigger fingers. AR 681.

On July 6, 2015, Dr. Rainville noted that plaintiff had a left hand grip strength of 20 kg and pinch of 8, right hand grip strength of 6 kg and pinch of 2, a significantly positive Tinel sign, limited right wrist and hand flexion and tenderness at various points. Dr. Rainville recommended therapy, a nerve test and a referral to a rheumatologist. AR 608-09.

On October 2, 2015, Dr. Rainville found that plaintiff had mildly positive median nerve compression, a positive Tinel sign at the wrist, pain and tenderness at various points, a 7 centimeter flexion gap and full passive flexion of her hand and fingers. Dr. Rainville noted that carpal tunnel injections reduced plaintiff's pain for about a week, but that plaintiff's symptoms did not fit any one particular problem. AR 602-03.

At a rheumatology consultation on November 23, 2015, plaintiff was unable to make a full fist with her right hand, which was painful and tender. The rheumatologist noted that plaintiff's symptoms and examination were consistent with complex regional pain syndrome but other rheumatological conditions would be ruled out. AR 656.

5. State agency physician opinions

At the initial level of review on September 16, 2014, Dr. Pat Chan found plaintiff capable of light-level work with no use of her right arm and only occasional overhead reaching with her left arm. AR 84-85. At the reconsideration level of review on April 12,

2015, Dr. Harpreet Khurana also found plaintiff capable of light-level work limited by no use of her right arm but did not assess any left arm limitations. AR 96-99.

## C. Administrative Hearing

On May 12, 2017, Administrative Law Judge Diane Davis held a hearing at which plaintiff and a vocational expert testified. AR 13. Plaintiff had a non-attorney representative with her at the hearing.

Plaintiff testified that after her carpal tunnel surgery, she could not use her right hand at all. Although she sometimes uses her right hand to eat, she relies more on her left hand so that she is not in as much pain. AR 44-45. She cannot do the laundry because the clothes are too heavy for her to lift with her right hand. During her family's recent move to her mother-in-law's home, plaintiff was able to carry a few items that weighed less than five pounds, but only for a short while before her hand became weak and painful. She cannot lift a gallon of milk and uses her left arm to carry her purse. Plaintiff testified that she can no longer drive because of her medications, which include Lyrica, Cyclobenzaprine (for muscles in her hand), Sumatriptan (once or twice a week for migraines), Savella (for pain) and Zolpidem or Trazadone (for sleeping). AR 46-48, 56. Plaintiff has not been able to garden since 2013. AR 49.

Plaintiff testified that she went a couple of times a month to physical therapy after her carpal tunnel release surgery, but it did not help, so her doctors sent her back to the surgeon. Plaintiff does not remember how many physical therapy appointments she had

kept before she stopped going. AR 43. After having additional surgery on two fingers of her right hand, she went back to physical therapy in October 2016 and started water therapy at the YMCA. However, her insurance company recently informed her that it would no longer cover her physical therapy because it had not been successful. AR 50, 52. Plaintiff testified that the water therapy is more helpful than other non-water exercises or stretches because it allowed her to move more freely and did not create tension in her hand that resulted in spasms. AR 54. Neither Dr. Rainville (her surgeon) nor Dr. Schmidt ever told her that additional exploratory surgery might offer her other options for her right hand or index finger. AR 55-56.

### D. Administrative Decision

In a written decision issued on August 2, 2017, the administrative law judge concluded that plaintiff was severely impaired by complex regional pain syndrome of the right hand post carpal tunnel release; right upper extremity medial epicondylitis, ulnar neuritis and elbow spurs; and moderate arthropathy of the acromioclavicular joint in the right shoulder. AR 15.

The administrative law judge found that plaintiff retained the residual functional capacity to perform sedentary work with the following limitations: occasional balancing, stooping, kneeling, crouching, crawling and climbing ramps and stairs; no climbing ladders, ropes or scaffolds or work at unprotected heights; and occasional handling, fingering, pushing and pulling with her right dominant extremity. AR 19. The administrative law

judge found that plaintiff's subjective limitations were "not entirely consistent with the medical evidence and other evidence." AR 20. She gave partial weight to the opinions of state agency medical consultants Pat Chan and Harpreet Khurana, and little weight to the opinions of physician assistant Troy Stoneberg and occupational health physician Michael Fitzgerald. AR 27-29. (In reaching her decision, the administrative law judge made several specific findings with respect to the medical evidence that I will discuss in more detail below.)

The administrative law judge determined that plaintiff could not perform any of her past relevant work. Relying on the testimony of a vocational expert who testified in response to a hypothetical question based on the residual functional capacity assessment, the administrative law judge found that jobs existed in significant numbers in the national economy that plaintiff could perform, including rental clerk, counter clerk and usher. AR 29-31.

OPINION

A. Relevant Legal Standards

In reviewing an administrative law judge's decision, I must determine whether the decision is supported by "substantial evidence," meaning "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Moon v. Colvin, 763 F.3d 718, 721 (7th Cir. 2014) (citations omitted). This deferential standard of review

> does not mean that we scour the record for supportive evidence or wrack our brains for reasons to uphold the ALJ's decision. Rather, the administrative law

judge must identify the relevant evidence and build a 'logical bridge' between
that evidence and the ultimate determination.

Id.  See also Villano v. Astrue, 556 F.3d 558, 562 (7th Cir. 2009) (administrative law judge

need not discuss every piece of evidence but "must build a logical bridge from evidence to

conclusion"); Briscoe ex rel. Taylor v. Barnhart, 425 F.3d 345, 351 (7th Cir. 2005) ("[T]he

ALJ must . . . explain his analysis of the evidence with enough detail and clarity to permit

meaningful appellate review.").

Although an administrative law judge need not rely on a certain physician's opinion

to assess a claimant's residual functional capacity, there must be some evidence supporting

her findings.  Social Security Ruling 96-8p.  With respect to a treating physician opinion,

an administrative law judge is required to give the opinion controlling weight if it is

"well-supported by medically acceptable clinical and laboratory diagnostic techniques and

is not inconsistent with the other substantial evidence in the case record."  20 C.F.R §

404.1527(c)(2); Scott v. Astrue, 647 F.3d 734, 739 (7th Cir. 2011).  The administrative law

judge must give good reasons for the weight that he assigns a treating physician's opinion.

Bates v. Colvin, 736 F.3d 1093, 1101 (7th Cir. 2013); Roddy v. Astrue, 705 F.3d 631, 636-

37 (7th Cir. 2013).  If the administrative law judge chooses not to give a treating physician's

opinion controlling weight, "the regulations require the ALJ to consider the length, nature,

and extent of the treatment relationship, frequency of examination, the physician's specialty,

the types of tests performed, and the consistency and supportability of the physician's

opinion."  Moss v. Astrue, 555 F.3d 556, 561 (7th Cir. 2009).  See also 20 C.F.R. §

404.1527(c).

To evaluate a claimant's testimony about her symptoms and limitations, an administrative law judge must consider a number of factors, including: (1) the individual's daily activities; (2) the location, duration, frequency and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) measures other than treatment the individual uses or has used to relieve pain or other symptoms; and (7) any other relevant factors concerning the individual's functional limitations and restrictions. Social Security Ruling (SSR) 16-3p, 2016 WL 1119029 (vers. eff. Mar. 28, 2016 to Oct. 25, 2017). (In 2016, the commissioner issued SSR 16-3p to update SSR 96-7p's guidance on symptom evaluation and eliminate use of the term "credibility" to "clarify that subjective symptom evaluation is not an examination of an individual's character." However, this clarification did not substantively change 96-7p's guidance (both rulings use the same two-step test and direct consideration of the same seven factors). Cole v. Colvin, 831 F.3d 411, 412 (7th Cir. 2016) ("The change in wording is meant to clarify that [ALJs] aren't in the business of impeaching claimants' character; obviously [ALJs] will continue to assess the credibility of pain assertions by applicants.").) As with a treating physician opinion, an administrative law judge must not reject a claimant's testimony that supports a finding of disability without giving specific reasons for rejecting that testimony, explaining how any

reported limitations are or are not consistent with the evidence in the record. <u>Britt v. Berryhill</u>, 889 F.3d 422, 426 (7th Cir. 2018).

Finally, with respect to Complex Regional Pain Syndrome (also known as Reflex Sympathetic Dystrophy Syndrome (RSDS)) in particular, Social Security Ruling 03-02p, 2003 WL 22399117 at *7, requires that "[c]areful consideration must be given to the effects of pain and its treatment on an individual's capacity to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." The ruling also cautions that "conflicting evidence in the medical record is not unusual in cases of RSDS/CRPS due to the transitory nature of its objective findings and the complicated diagnostic process involved." <u>Id.</u> at *5. "The signs and symptoms of RSDS/CRPS may remain stable over time, improve, or worsen." <u>Id.</u>

## A. <u>Right Hand Limitations</u>

In her residual functional capacity assessment and hypothetical to the vocational expert, the administrative law judge limited plaintiff to occasional handling, fingering, pushing and pulling on her right side. She did not adopt the opinions of Drs. Chan, Khurana and Fitzgerald that plaintiff was not able to perform any work with her right hand, which according to the vocational expert, AR 74-75, would have precluded all work. The administrative law judge gave the following reasons for not crediting the three physician opinions:

- Although plaintiff's grip strength is significantly reduced, it is not absent because Dr. Rainville found on July 6, 2015 that plaintiff had a right grip strength of 6 kg. AR 608.

- The administrative law judge observed that plaintiff used her right hand at the hearing.

- Plaintiff was able to use her right arm to transfer herself on and off a physical therapy treatment table on February 4, 2014. AR 408.

- Plaintiff reported in August 2014 that she was able to get her kids ready for school, wash and dry clothing, make a meal with help, vacuum, use a riding mower, drive and grocery shop. AR 261. She was also able to go camping on one occasion.

AR 27.

I agree with plaintiff that the administrative law judge's focus on her ability to use her hand in some unspecified manner at the hearing, to help herself get on and off an examination table and to grip up to 6 kilograms at one appointment do not establish that plaintiff has the ability to perform full-time work on a sustained basis. Scrogham v. Colvin, 765 F.3d 685, 700 (7th Cir. 2014) ("[I]ll-advised activity [that led to one of plaintiff's doctor's visits] cannot support a conclusion that [plaintiff] was capable of performing full-time work."); Roddy v. Astrue, 705 F.3d 631, 639 (7th Cir. 2013) (ability to perform certain, sporadic activities does not necessarily translate into ability to work full-time). Plaintiff regularly reported significant pain and loss of function in her right hand, and the examinations and testing performed on her right hand, wrist and arm were consistently abnormal. The fact that she had some grip strength on one occasion does not mean that she was capable of using her right hand for work.

As plaintiff points out, SSR 03-02p specifically addressed complex regional pain syndrome, which "most often result[s] from trauma to a single extremity" and "include[s] complaints of intense pain and findings indicative of autonomic dysfunction at the site of the precipitating trauma." Paschal v. Berryhill, No. 17 CV 5627, 2018 WL 4095100, at *3 (N.D. Ill. Aug. 28, 2018) (citing SSR 03-2p). The ruling makes clear that "[i]t is characteristic of this syndrome that the degree of pain reported is out of proportion to the severity of the injury sustained by the individual." Id. The administrative law judge failed to cite or consider SSR 03-02p. Although this failure may not qualify as reversible error, the ruling does address several of the concerns that the administrative law judge raised in her decision concerning inconsistencies in plaintiff's reports and the medical record. In addition, SSR 03-02p stresses the importance of third-party reports. Plaintiff's husband submitted such a report, but the administrative law judge improperly dismissed it in part on the ground that plaintiff's husband is not medically trained and is not a disinterested third party.

The Court of Appeals for the Seventh Circuit also has cautioned administrative law judges against equating sporadic daily activities with the ability to work eight hours a day in a competitive employment environment. Beardsley v. Colvin, 758 F.3d 834, 838 (7th Cir. 2014); Mendez v. Barnhart, 439 F.3d 360, 362 (7th Cir. 2006). In this case, the administrative law judge cited a few household chores that plaintiff listed in her August 2014 function report. However, plaintiff later made it clear in subsequent reports to her physicians and in her hearing testimony that she was no longer able to wash and dry clothing, drive or shop. Although the administrative law judge faults plaintiff for submitting

inconsistent reports with respect to her daily activities, plaintiff completed her written function report more than two years before her hearing testimony, and the record supports a conclusion that her functioning deteriorated during that time period.

The administrative law judge also was not persuaded by plaintiff's self-reported limitations with respect to her right hand and arm, explaining that in addition to the reasons previously discussed, she did not find plaintiff's account credible because plaintiff was noncompliant with physical and occupational therapy, did not take narcotic pain medication and did not seek treatment from an emergency department. These conclusions are not supported by substantial evidence in the record.

As an initial matter, the administrative law judge failed to cite any evidence showing that plaintiff refused narcotic medications or did not visit an emergency room because she was not in significant pain. In fact, the record shows that plaintiff was on multiple pain medications and regularly took the narcotic pain medication Tramadol. Moreover, none of plaintiff's treating providers gave an opinion on the usefulness of narcotic medications for plaintiff's conditions. Myles v. Astrue, 582 F.3d 672, 677–78 (7th Cir. 2009) ("The inference that [insulin] was not prescribed because Myles was not experiencing significant problems appears to be the ALJ's own inference, and is wholly unsupported by the record."). Without more information, it is not possible to determine whether plaintiff's failure to take narcotics or visit the emergency room means that she was not in significant pain.

The administrative law judge also erred in concluding that plaintiff's symptoms were not severe because she failed to follow through on physical and occupational therapy.

Although a review of the record shows that plaintiff missed some therapy appointments and did not complete the full recommended course of therapy in every instance, there is substantial evidence that plaintiff had difficulty attending and participating in some of her appointments.  The Court of Appeals for the Seventh Circuit has held that evidence of noncompliance "should not negatively affect a claimant's credibility if there are good reasons" for the individual not to fully comply with prescribed treatment.  Murphy v. Colvin, 759 F.3d 811, 816 (7th Cir. 2014) (Although "[t]here may be a reasonable explanation behind Murphy's actions, such as she may not have been able to afford the treatment, further treatment would have been ineffective, or the treatment created intolerable side effects," "we cannot assess the validity of the ALJ's credibility determination because the ALJ did not ask important questions to determine if Murphy's actions were justifiable.").  In this case, the record shows that plaintiff reported missing various physical therapy appointments in 2013 and 2014 because of her carpal tunnel release surgeries, illness and transportation difficulties.  Additionally, on more than one occasion, plaintiff's therapist or physician noted that plaintiff was unable to perform a certain exercise or test because of her pain.  The administrative law judge failed to consider these difficulties or question plaintiff about them at the hearing.  In addition, the administrative law judge failed to recognize that plaintiff was making efforts to comply with the treatment by doing her exercises at home and working with her physicians to find a therapy provider who both took her insurance and was located closer to her home.

Accordingly, for the reasons set out above, I am reversing the decision of the administrative law judge and remanding this case for further consideration of plaintiff's right extremity impairment. On remand, the administrative law judge should determine what limitations are supported by substantial evidence in the record and fully explore the effect of those limitations on plaintiff's ability to engage in competitive employment. In addition, the administrative law judge should review SSR 03-02p and consider its relevance to plaintiff's symptoms and limitations.

## B. Left Extremity Limitations

Plaintiff criticizes the administrative law judge for rejecting Dr. Chan's 2014 finding that she is limited to occasional overhead reaching on the left side and Dr. Fitzgerald's September 2013 opinion that she could use her left arm for only part-time work. Contrary to plaintiff's assertion, the administrative law judge considered plaintiff's left arm problems and correctly noted that plaintiff had only intermittent, mild abnormal findings as to her left shoulder and reported being able to use her left arm in 2015. AR 27. A review of the record shows that although plaintiff underwent carpal tunnel release surgery on the left side in July 2013, she healed well. It also appears that the left hand restrictions that Dr. Fitzgerald assessed in September 2013 were limited to her surgical recovery period. Although plaintiff later developed new symptoms in her left shoulder in July 2014, her subsequent examinations revealed very few abnormal findings, particularly by 2015. In fact, in April 2015, state agency physician Dr. Khurana concluded that plaintiff's left arm function had

improved and that no left extremity limitations were warranted.  In addition, none of plaintiff's treating physicians assessed any further restrictions with respect to her left arm or hand.  Accordingly, I find that the administrative law judge did not err by failing to assess any limitations with respect to plaintiff's left arm or hand.

ORDER

IT IS ORDERED that the decision of defendant Andrew Saul, Commissioner of Social Security, denying plaintiff Candina L. Beebe benefits, is REVERSED and REMANDED for further proceedings consistent with this opinion.  The clerk of court is directed to enter judgment in favor of plaintiff and close this case.

Entered this 31st day of October, 2019.

BY THE COURT:

/s/
_____
BARBARA B. CRABB
District Judge